Honorable Justice of the Court, good morning. Thank you for the opportunity to present my client's case this morning. Ms. Ramirez De Aguirre finds herself before the court because after three years of being granted lawful permanent residence status, she was informed by INS that that was issued in error, and that set in to motion these entire proceedings. She brought the matter pursuant to a notice to appear. She was summoned to immigration court. She had a counsel there and defended why her permanent residence status should not be revoked. That was denied. Appeal was taken to the Board of Immigration Appeals. Her attorney at the Board of Immigration Appeals neglected to inform my client when the board actually rendered its decision, thereby barring Ms. Ramirez De Aguirre from going forward with her petition for review. I then became involved and presented a writ to the district court, District of Nevada, and that was subsequently denied, and we find ourselves here. In the interim, the court had asked what effect the REAL ID Act might have on this appeal. I researched that issue. I found a case out of the Fifth Circuit, Gutierrez-Morales v. Homon, 461 F3rd 605, which was decided August of 06, and the court actually dealt with a very similar issue. It dealt with ineffective assistance of counsel and a writ, and the court there found that the REAL ID Act had no effect on the ineffective assistance of counsel claim. As the court is aware, one of the things the REAL ID Act did was it removed this honorable court's ability to hear anything that was discretionary in nature, a request for discretionary relief such as cancellation of removal, political asylum. Those forms of relief have inherent within them discretionary issues, and Congress, for whatever reason, has taken that away from this honorable court. Ineffective assistance of counsel is not such a case. It's not an issue of discretion, and that's made clear in the Gutierrez-Morales v. Homon matter. Additionally, one of the reasons I was behind is... One of the things that I would wonder about, though, was that the REAL ID Act seems to say that there's only one way to attack a removal order, and that's by petition for review in this court. Correct. Aren't you really attacking a removal order? I mean, it's true it's by way of ineffective assistance, but... Yes. And when I had filed my appeal, which was, I wrote that down, I believe it was October 5th of 2004, the REAL ID Act had not yet passed. Oh, I understand. And, in fact, I was discussing... Let me ask you this. Why don't we just convert your habeas petition to treat it as though it were a petition for review and just look at the merits? That's exactly what I'm requesting this court do and give Ms. Ramirez de Aguiar the opportunity to present the claims that she could have presented. Those claims... It seems like you're just... You know, through circumstances, you just get the benefit, on the one hand, of the REAL ID Act that, in a limited way, to the extent it helps you... I agree. I agree. It would remove the timeliness issue. Exactly. It kind of takes the... That's what you got to say on the merits. Yeah. On the merits, which is an interesting issue. Thank you, Your Honor. One of the reasons I was denied is because the court ruled that everything that I could have raised, that was raised at the Board of Immigration Appeals, was, in fact, discretionary relief. And, therefore, the Circuit Court of Appeals doesn't have discretion. I disagree with that because the granting of lawful permanent resident status through marriage, either to a U.S. citizen or a permanent resident, is not discretionary. It is legal, statutory in nature, and, therefore, I believe the court would still have jurisdiction to hear that very issue. If a person meets the requirements and can check all the boxes, nobody has discretion to deny that relief. And that is exactly the issue here, is, was the government acting properly in rescinding that relief? It's not a matter of discretion, Your Honor. Now, we have an old case that goes back quite a while, the D. Hernandez, which says that the government does not stop when it's granted permanent resident status to someone mistakenly. So why isn't that controlling? It may well be controlling, Your Honor, but my client hasn't had the opportunity to present that and to be fully heard on that issue. Oh, but why do we send it back if the law is clear? Well, I don't believe the law is as clear. There needs to be, from what I've researched, a showing of affirmative misconduct. Well, it's not affirmative. It isn't sufficiently affirmative, anyway, for the government to make a mistake as to somebody's status, particularly if the person might at some point have called the mistake to their attention. I appreciate that, Your Honor, but that's an aspect of the case that I haven't had the opportunity to even develop. It has not had the opportunity to be developed in any form. You don't have any answer now, and no answer certainly occurs to me. You're right. I don't have the answer now, Your Honor. I wish I did, but as I stated, that would — We don't go through empty gestures, send it back to a district court for more. You know, it just seems ridiculous. Well, and I don't think it would be an empty gesture, Your Honor. I think that the law on this case — I'm sorry. Well, I don't want to cut off your answer to Judge Noonan. Thank you, Your Honor. I think it's, one, that it needs to be factually developed. It needs to be legally presented. And she has the opportunity to bring this to this court, to the United States Supreme Court, if necessary. She has the opportunity to argue that there should be a good-faith extension of existing law, none of which, unfortunately, has been able to be presented because of the failure to inform my client that she had a right to come here in the first instance. You see, the only thing that the district court could do, if we sent it back, would be to immediately transfer it to this court because the district court has no habeas jurisdiction left. The trouble we have here is that you're saying — you're asking us to treat this as a petition for review, and we certainly, in the order that was sent out, had case law that supports that. But it isn't very well framed that way. We don't have a full administrative record. There are lots of things that we need that we don't have if we're really going to review and decide what we could review about what the board did. I agree that that is a problem because the normal mechanism would be to file a petition for review. Then the government provides — not Mr. Addington, but through INS, we would then get the entire administrative record on appeal. I don't have any of that either because I wasn't able to take advantage of those mechanisms that would have given me the entire record on appeal that would have let me present that to the court. I'm not asking for remand at this point. I am asking that this case be converted into a petition for review and that we be allowed to get the entire administrative record on appeal and present that full issue to the court. Well, we'll see what the government thinks about the Real ID Act. Thank you. Does the court have any further questions? Do you know if the administrative record exists, or is that a question better directed at the— I believe it exists, but it does not exist in my office.  Thank you, Your Honor. Thank you. Thank you, Your Honor. May it please the court, my name is Greg Addington. I'm an assistant U.S. attorney for the District of Nevada in Reno. It's my pleasure to represent the immigration authorities. Before the respondents, I want to first address the court's order of November 1st, which asked the parties to be prepared to discuss the effect of the Real ID Act and this court's decision in Alvarez-Barajas, a decision from last year. With one slight wrinkle, which I will note in a moment, the two cases are, for purposes of this procedural analysis, identical. Both cases had a habeas petition filed prior to the enactment of Real ID. This case, as in Alvarez, the district court denied the habeas petition prior to the enactment of Real ID, so the district court surely can't be faulted for not transferring it. And then, of course, the appeal is pending at the time Real ID is enacted in May of 2005. Under Alvarez, the appeal, the matter on appeal, is construed and treated as a petition for review and addressed as if it were an original proceeding filed in the first instance before this court. The concern I have, and the wrinkle that I mentioned, is that Alvarez talks about it being treated as a timely petition for review. This creates a bit of an anomalous situation in this case because treating it as a timely petition for review completely eliminates the entire ineffective assistance of counsel claim. There's no need for an ineffective assistance of counsel claim arising from the failure to file the timely petition for review if this is treated as a timely petition for review. It's anomalous because if the petitioner had filed an untimely petition for review here, she would have been obliged to explain why is your petition for review untimely. But having filed a habeas petition in the district court after the 30-day window of time had expired, and then having that be treated as a timely petition, it treats two classes of petitioners. Is there some language in the Real ID Act, though, that says that we're to treat it as though it were timely filed? Well, it doesn't enact itself. It says that that section of the statute that imposes the 30-day limit is not applicable. Right. And in my view, I'm not sure that means treat it as timely, but rather you don't look at the date of transfer as the date when the petition for review is deemed to be filed. You still look at the procedural process. That seems to suggest that she would have had to file her petition for writ of habeas corpus within 30 days. Exactly. But that's never been the case in the habeas proceedings. We just did another case called Nath v. Gonzales, and I think another one where we just treated it as though it were timely filed. Is that any reference to these time problems? And I'm not sure that this anomalous situation that I've just described has been fully addressed in those prior cases. It's just simply most of the cases simply say we treat it as a timely petition. And I'm not sure how far up the standard of anomaly one has to go before it becomes absurd, and I'm not suggesting that it's absurd, but I think it does create this anomalous situation that can be avoided by treating this as not so much a timely petition for review, but as a petition for review with all of the procedural deficiencies which were inherent in the original filing before the district court. I think this is a bit of an academic exercise because it's a roundabout way of getting to the same place, in my view, and that is how do we address the merits of this case treating it as a petition for review, either with or without the ineffective assistance of counsel claim? We still have to address is there a plausible claim for relief here, either in the context of the assistance of counsel issue or simply facially on the merits of that claim. Here the claim that's being made is based on estoppel. Should the government be estopped from rescinding her permanent resident alien status because it is apparent that that status was provided either through affirmative fraud by the petitioner herself or through an error by the government. Her resident alien status was provided in the context of a petition for alien relative by her husband. Her husband was not entitled to file such a petition on her behalf because he was not at that time entitled to permanent resident alien status himself. And so it has not so much a domino effect, but you have to look behind the petition that was filed on her behalf to see whether the petitioner there, her husband, was even entitled to file such a petition. We can't really tell completely, but at least from the IJ's decision and the little bit we have, it's a little more complicated than what you've just said. At one point, you know, they try to revoke his status and the IJ grants him relief basically. Right, and then that's reversed by the BIA. In the meantime, that takes a while while it goes up to the court of appeal. It does, and then by the time this court affirms the BIA decision, I believe it's 1996 or 98, and then he's eventually physically removed to Mexico. And in the meantime, she obtains her immigrant visa and enjoys the benefit of that immigrant visa for a period of time. But eventually, and that's why I'm not pursuing aggressively this fraud issue, but clearly she was not entitled to that immigrant visa because the person who applied for that immigrant visa on her behalf was not entitled to do so. I think it may be clear that the government shouldn't have given it to her, but to state it as strongly as you could on her behalf, it would be that the government must have known collectively that she wasn't entitled to the visa, and they gave it to her anyway, and does that amount to affirmative misconduct? And I would say no, it clearly does not, because she comes into the consulate in Mexico City and says, I'm entitled to this visa. I've checked all the right boxes. My husband has filed this petition on my behalf. He was a resident alien at the time, and I don't know what level of communication there is globally in terms of how cross-checks are made to make sure that all of those representations are correct. But based on those representations that she makes and simplifying it, the box is being checked properly. She's issued this visa. That does not rise to the level of a pattern of official misconduct that would give rise to estoppel. They would estop the government from ever rescinding that erroneous decision. It is at best simply an error that was made that granted her relief to which she was not entitled, granting her status to which she was not entitled. And certainly the government can rescind that grant of privilege, that grant of status,  I guess at the time she first filed, his status was, he did have a permanent resident status. Maybe he shouldn't have had, but he did have it. But then by the time she interviews, it's been revoked or something, I think. I don't think so, because his petition on her behalf in 1992, he had already committed the felony offenses, which eliminated his status, his eligibility. Well, it didn't eliminate it automatically. Doesn't it have to be a hearing or something like that? Yes, and there was a hearing. There was a proceeding that resulted in 1996. Right. Well, that's my point. That's four years later. Correct. And then she goes in in 1998 to Mexico City Consulate and obtains a new visa. That's when that was filled out. Okay. And so there clearly was a sense in which she either knew or should have known of her husband's immigration status. And so that checklist was made out at the interview, at the interview at the consulate, is that correct? In 1998. Correct. Okay. Would the administrative record contain all this information? Do we know? Well, I think it must have, because the immigration judge's decision refers to that testimony that the immigration judge heard to support this claim of estoppel, and obviously the immigration judge rejected the claim of estoppel as factually unsupportable. And I would note, Your Honor, that the district court in this habeas proceeding, in an April 2005 order, asked the petitioner, in effect said, I'm not sure where your claim of ineffective assistance of counsel issue is going, but provide additional evidence, additional argument to support your claim, so that I can see, so that I, the district court, can see whether you have plausible grounds for relief under this ineffective assistance of counsel analysis. And so the petitioner provided an affidavit, provided the argument, the brief that was supplied to the immigration judge and the BIA, to support that notion that there was plausible grounds for relief. And so we have the petitioner's best presentation, best factual presentation, to support that claim. And it does not provide support. Do you think that if we decide to treat this as a petition for review, timely, that we should at least have the administrative record before disposing of the case? Or could we just do with what we got? I think that there's a sufficient record before the court now, with her affidavit, with the brief that she provided to BIA that discussed the petition. Well, in a petition for review, you're stuck with what's in the record. Correct. Not the affidavit. I think that affidavit would have been in the record. I'm not sure if that was supplied in response to the district court's request in the order of 2005, April 2005, whether that was part of the record below. But in either event, that's the record that she provided to the district court to support her claim. That might be a little bit different, though, than the record before the immigration judge. It might be slightly different. One would think it would be slightly more expansive than was provided below because it was rejected below. But this court, I believe, has a sufficient record to deny the estoppel-based claim. We've got a minute. I just want to add one more thing about the plausible claims for relief, because that certainly is going to be pivotal to a client's success or lack thereof. One of my own concerns with the Derringer opinion is, on one hand, it says prejudice is presumed when somebody is denied the entire benefit of the appellate process. And then at the very end, the court does say, oh, by the way, there needs to be some plausible form for relief. And I was trying to square those two in my mind, and I'm not sure that I can. I tend to agree with the bulk of the court's ruling in Derringer that said it's a denial of due process and prejudice is presumed when somebody is prevented entirely from participating in the appellate process. Plausible forms of relief that were mentioned at the end of the Derringer opinion, I believe, is something that eventually is going to have to be addressed. But I believe for purposes of this hearing and for my client's ability to get her foot back in the door on a petition for review, I would respectfully request that the court grant that relief and have the administrative record in full before the court and allow her also to make whatever arguments she could make through the appellate process about estoppel and the applicability of estoppel to this exact scenario, plus any other due process claims that she may have as to streamlining at the Board of Immigration Appeals. Okay. Thank you. All right. Thank you. We appreciate your arguments. The matter will be submitted. The court's going to take a short 10-minute recess before we pick up the next case on the case.
judges: Canby, Noonan, Paez